No. 14-40459

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

*RAMONA HINOJOSA, individually as a wrongful death beneficiary
and as the heir to the estate of ALBERT HINOJOSA,*
**Plaintiff-Appellee,**

v.

*BRAD LIVINGSTON, RICK THALER, WILLIAM STEPHENS,*
**Defendants-Appellants.**

---

**On Appeal from the United States District Court
Southern District of Texas, Corpus Christi Division
Civil Action No. 2:13-cv-319**

---

**APPELLANTS' BRIEF**

---

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

**DEMETRI ANASTASIADIS***
Assistant Attorney General
State Bar No. 01164480
P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / Fax (512) 495-9139

**ATTORNEYS FOR DEFENDANTS-APPELLANTS**
**\*Attorney of Record**
**ORAL ARGUMENT REQUESTED**

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following persons and entities as described in Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal.

***Plaintiff-Appellee***
Ramona Hinojosa, individually and as heir to the estate of Albert Hinojosa[1]

***Counsel for Plaintiff-Appellee***
Jeffrey S. Edwards
Scott Medlock
Sean Flammer
THE EDWARDS LAW FIRM
1101 East 11th St.
Austin TX 78702

Brian Rolland McGiverin
Wayne Nicholas Krause
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Dr.
Austin TX 78741

---

[1] Ramona Hinojosa has died. A motion pursuant to FED. R. CIV. P. 25(a) is expected to be filed when a proper party has been identified.

***Defendants-Appellants***
Brad Livingston
William Stephens
Rick Thaler

***Counsel for Defendants-Appellants***
Demetri Anastasiadis
Maurice Lawrence Wells
Allan Kennedy Cook
OFFICE OF TEXAS ATTORNEY GENERAL
P. O. Box 12548
Austin TX 78711-2548

***Co-Defendants***
Texas Department of Criminal Justice
Ernest Gutierrez, Jr.
Eileen Kennedy

***Counsel for Co-Defendants***
Bruce Garcia
Matthew J. Greer
OFFICE OF TEXAS ATTORNEY GENERAL
P. O. Box 12548
Austin TX 78711-2548

***Co-Defendants***
University of Texas Medical Branch (UTMB)
Owen Murray

***Counsel for Co-Defendants***
Calysta L. Lantiegne
Shanna Elizabeth Molinare
Lacey E. Mase
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin TX 78711-2548

/s/ DEMETRI ANASTASIADIS
**DEMETRI ANASTASIADIS**
Assistant Attorney General

# TABLE OF CONTENTS

Certificate of Interested Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, iii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, v

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi, vii, viii, ix, x

Statutes, Rules and Codes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Basis for the District Court's Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Basis for the Court of Appeals' Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      Did the District Court Err in Permitting Discovery on Heat- Management Issues
        Affecting the Entire Texas Prison System When That Discovery Was Irrelevant
        to Deciding Defendants' Motion to Dismiss on the Basis of Qualified
        Immunity? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     Does the Court of Appeals Have Jurisdiction to Consider the Appeal of an Order
        Denying a Motion to Dismiss Based on Qualified Immunity? . . . . . . . . . . . 3

III.    Did the District Court Err in Denying Defendants' Motion to Dismiss on the
        Basis of Qualified Immunity When Plaintiffs' Complaint Failed to Allege
        Sufficient Facts That Would Overcome Defendants Presumptive Right to
        Immunity? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     Did Clearly Established Constitutional Law Require Prison Administrators to
        Provide Round-the-Clock, 24-7 on Site Prison Medical Services or Prohibit
        Providing Medical Care to Prison Inmates by Use of Local Emergency Rooms
        and Hospitals Between 5:00 p.m. and 9:00 a.m. on August 29, 2012 . . . . . . 4

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.     The District Court Erred in Permitting Discovery by Plaintiff on Heat-Management Issues Affecting the Entire Texas Prison System When That Discovery Was Irrelevant to Deciding Defendants Motion to Dismiss on the Basis of Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.    This Court Has Jurisdiction to Consider the Appeal of an Order Denying a Motion to Dismiss Based on Qualified Immunity.. . . . . . . . . . . . . . . . . . . . 17

III.   The District Court Erred in Denying the Executive Defendants' Motion to Dismiss on the Basis of Qualified Immunity Where the Complaint Failed to Allege Sufficient Facts That Would Overcome Their Such Immunity . . . . 23

IV.   Did Clearly Established Constitutional Law Require That Prison Security Administrators Provide Round the Clock, 24-7 on Site Prison Medical Facilities and Providers or Prohibit Them from Providing Medical Services to Prison Inmates by Use of Local Emergency Rooms and Hospitals During Certain Hours on August 29, 2012? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Notice of Electronic Filing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

# TABLE OF AUTHORITIES

**Case**                                                                 **Page**

*Anderson v. Creighton*,
    483 U.S. 635, 639, 640, 107 S.Ct. 3034, 3039 (1987) . . . . . . . . . . . . . . 33, 34

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678, 129 S.Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . 26, 28, 43

*Atteberry v. Nocona Gen. Hosp.*,
    430 F.3d 245, 251 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Backe v. LeBlanc*,
    691 F.3d 645, 648-49 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 17

*Behrens v. Pelletier*,
    516 U.S. 299, 307-308, 313, 116 S.Ct. 834, 840 (1996) 6, 17, 19, 20, 21, 22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 555, 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . 26

*Bell v. Wolfish*,
    441 U.S. 520, 536, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) . . . . . . . . . . . 43

*Bellamy v. Mount Vernon Hosp.*,
    No. 07 Civ. 1801, 2009 WL 1835939, S.D.N.Y. June 26, 2009) . . . . . . . . 28

*Blackmon v. Garza*,
    484 Fed. Appx. 866 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Blackmon v. Kukua, et al.*,
    758 F.Supp.2d 398, 411, 414 (S.D. Tex. 2010) . . . . . . . . . . . . . 25, 38, 39, 42

*Bright v. Gallia Cnty, Ohio*,
    2014 WL 2457629 (6th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Brown v. Miller*,
    519 F.3d 231, 236 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Brown v. Nix*,
   33 F.3d 951, 953 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cantrell v. City of Murphy*,
   666 F.3d 911, 918 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*Chasensky v. Walker*,
   740 F.3d 1088 *1092-93 (7th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cozzo v. Tangipahoa Parish Council–President Gov't*,
   279 F.3d 273, 286 (5th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Dixon v. Howe*, 44 Fed.Appx.
   274, 2002 WL 1891419  (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Dodds v. Richardson*,
   614 F.3d 1185 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Doe ex rel. Doe v. Hillsboro Indep. Sch. Dist.*,
   81 F.3d 1395, 1401 (5th Cir. 1996), vacated *en banc* on other grounds, 113
   F.3d 1412 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Domino v. Texas Dept. of Criminal Justice*,
   239 F.3d 752, 754 (5th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 31

*Dudley v. Angel*,
   209 F.3d 460, 462 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Durmer v. O'Carroll*,
   991 F.2d 64, 69 (3rd Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Edwards v. Loggins*,
   476 F. App'x 325, 326 (5th Cir.2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Estelle v. Gamble*,
   429 U.S. 97, 104-07 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Fantone v. Herbik*,
   2013 WL 2564429 (3rd Cir.2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Farmer v. Brennan*,
   511 U.S. 825, 837-838, 844, 114 S.Ct 1970 (1994) . . . . . . . . . . . . . . . 36, 37

*Gamble v. Estelle*,
    554 F.2d 653, 654 (5th Cir.1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Gates v. Tex. Dep't of Protective and Reg. Servs.*,
    537 F.3d 404, 435 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*George v. Rehiel*,
    738 F.3d 562 (3rd Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Goodman v. Harris County, et al.*,
    571 F.3d 388, 395 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Hager v. Arkansas Dept. of Health*,
    735 F.3d 1009, 1013 (8th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hare v. City of Corinth, Miss.*,
    74 F.3d 633, 639 (5th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Hayes v. Snyder*,
    546 F.3d 516, 527 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 49

*Helton v. Clements*,
    787 F.2d 1016, 1017 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Indian Palms Associates, Ltd.*,
    61 F.3d 197, 205 (3rd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 30

*Johnson v. Johnson*,
    385 F.3d 503, 523-524 (5th Cir.2004) . . . . . . . . . . . . . . . . . . . . 17, 20, 42

*Joseph v. Fischer*,
    2009 WL 3321011, (S.D.N.Y. Oct. 8, 2009) . . . . . . . . . . . . . . . . . . . . . . 28

*Lee v. Rushing*,
    2013 WL 2462247 (5th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 42

*Lee v. Young*,
    533 F.3d 505, 511 (7th Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Leslie v. Hancock County Bd. of Educ.*,
    720 F.3d 1338, 1343 (11th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lindsey v. McGinnis*,
    1994 WL 162610 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Locurto v. Safir*,
    264 F.3d 154, 164 (2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 21

*McVey v. Stacy*,
    157 F.3d 271, 275-76 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . 18, 19, 20, 23

*Miltier v. Beorn*,
    896  F.2d 848, 851, 854 (4th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Mitchell v. Forsyth*,
    472 U.S., 511 at 526, 105 S.Ct., at 2815(1985) . . . . . . . . . . . . . . . . . . . . . . 17

*Morgan v. Plano Independent School Dist.*,
    724 F.3d 579, 582 (5th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Morgan v. Swanson*,
    659 F.3d 359, 371-372 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 34

*Newton v. City of N.Y.*,
    640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Obata v. Harrington*,
    2013 WL 1442481 (pp.3-4) (D.Hawai'i,2013) . . . . . . . . . . . . . . . . . . . . 45, 49

*Parker v. Amos*,
    2011 WL 3568836, (W.D.Va.,2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 45

*Pettigrew v. Oklahoma ex rel. Oklahoma Dept. of Public Safety*,
    722 F.3d 1209 (10th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Pfannstiel v. City of Marion*,
    918 F.2d 1178, 1183 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Porter v. Epps*,
    659 F.3d 440, 445, 447-48 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Reyes v. City of Richmond, Tex.*,
    287 F.3d 346, 351 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Skinner v. Hinds County, Miss.*,
    2011 WL 4565586, (S.D.Miss.,2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Smith v. Brenoettsy*,
    158 F.3d 908, 911-12 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Soto-Torres v. Fraticelli*,
    654 F.3d 153 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Stapley v. Pestalozzi*,
    733 F.3d 804, 809 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Thompson v. Upshur Cnty., TX*,
    245 F.3d 447, 460 (5th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Tolan v. Cotton*,
    134 S. Ct. 1861, 1866 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*U.S. v. State of Michigan*,
    680 F.Supp. 928 (W.D.Mich.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Valentine v. Jones*,
    2014 WL 1689202, (5th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . 25, 38, 42

*Velasquez v. City of New York*,
    2012 WL 5879484 (E.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Walker v. Upshaw,*
    515 Fed.Appx. 334 (5th Cir. 2013). (S.D. Tex. 2013, unpublished) . . . . . . 25

*Wilson v. Birnberg*,
    13-20165, 2014 WL 2462561, (5th Cir. June 3, 2014) . . . . . . . . . . . . . . . . 26

*Wilson v. McGinnis*,
    2013 WL 5352699, (S.D. Tex. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*X-Men, et al. v. Pataki, et al.*,
    196 F.3d 56, 66 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Zapata v. Melson*,
    750 F. 3d  481 (5th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## Statutes, Rules and Codes

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 23, 25, 27, 42, 46, 49

Fed. R. Civ. Proc. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 17, 18, 19

FED. R. CIV. P. 25(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Fed. R. Evid. 201(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**No. 14-40459**

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

*RAMONA HINOJOSA, individually as a wrongful death beneficiary
and as the heir to the estate of ALBERT HINOJOSA,*
**Plaintiff-Appellee,**

**v.**

*BRAD LIVINGSTON, RICK THALER, WILLIAM STEPHENS,*
**Defendants-Appellants,**

*EILEEN KENNEDY, ERNEST GUTERREZ, JR., AND OWEN MURRAY in
their individual capacities, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
and UNIVERSITY OF TEXAS MEDICAL BRANCH,*
**Defendants-Appellees.**

_____

**STATEMENT REGARDING ORAL ARGUMENT**

Defendants-Appellants William Stephens, Rick Thaler and Brad Livingston

(hereinafter called executive defendants), request oral argument to assist the Court in

the decision process.  There are numerous parties and numerous issues, with some

issues applying to some parties but not others and related cases pending before this

Court.  Attention to detail is paramount in order to properly separate the issues relevant

to executive defendants' defenses and claims from the circumstances of other

defendants, which include TDCJ Garza West Unit correctional officers and medical

staff.

It is also necessary to separate the claims of Hinojosa from similar claims asserted by other inmates at other TDCJ prison units, pending before this appellate Court and various district courts in Texas. Oral argument would assist this Court in focusing on the claims made in this case by one medically vulnerable inmate, Albert Hinojosa, against the three highest ranking TDCJ security administrator executives Thaler, Stephens and Livingston.

## BASIS FOR THE DISTRICT COURT'S JURISDICTION

Hinojosa sues the executive defendants pursuant to 42 U.S.C. 1983. A district court has jurisdiction over such claims pursuant to 28 U.S.C. 1331 (federal question) and 28 U.S.C. 1343 (civil rights).

## BASIS FOR THE COURT OF APPEALS' JURISDICTION

The executive Defendants appeal the district court's order that denied their Motion to Dismiss based on qualified immunity and permitted discovery that was not narrowly tailored to the facts relevant to the issue of qualified immunity defense related to the death of Albert Hinojosa at the Garza West Unit on August 29, 2012.[2]

The Court of Appeals has jurisdiction to review such orders under the Collateral Order Doctrine.[3] A district court order denying a public official's motion to dismiss on the basis of qualified immunity is an appealable final judgment within the meaning of

---

[2]     ROA.1654-1656
[3]     *Backe v. LeBlanc*, 691 F.3d 645, 648-49 (5th Cir. 2012).

2

28 U.S.C.A. § 1291.[4]  A district court order permitting discovery from public officials that exceeds matters relevant to an official's qualified immunity is within the appellate review jurisdiction of a federal appeals court.[5]

A decision to deny a motion to dismiss based on qualified immunity and an order permitting discovery beyond facts necessary to resolve whether a public official is immune from suit is reviewable under a *de novo* standard.[6]  The order denying the executive defendants' motion to dismiss was filed on March 27, 2014.[7]  A notice of appeal was filed on April 25, 2014, within 30 days as required by Federal Rules of Appellate Procedure 4(a)(1)(A).[8]

## STATEMENT OF THE ISSUES

The following issues are before the Court:

I.     Did the District Court Err in Permitting Discovery on Heat-Management Issues Affecting the Entire Texas Prison System When That Discovery Was Irrelevant to Deciding Defendants' Motion to Dismiss on the Basis of Qualified Immunity?

II.    Does the Court of Appeals Have Jurisdiction to Consider the Appeal of an Order Denying a Motion to Dismiss Based on Qualified Immunity?

---

[4]     *Morgan v. Swanson*,  659 F.3d 359 (5th Cir. 2011).

[5]     *Zapata v. Melson*, 750 F. 3d  481 (5th Cir.  2014).

[6]     *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008), *citing Atteberry v. Nocona Gen. Hosp*., 430 F.3d  245, 251 (5th Cir. 2005).

[7]     ROA.1641

[8]     ROA.1737

III.    Did the District Court Err in Denying Defendants' Motion to Dismiss on the Basis of Qualified Immunity When Plaintiff's Complaint Failed to Allege Sufficient Facts That Would Overcome Defendants' Presumptive Right to Immunity?

IV.    Did Clearly Established Constitutional Law Require Prison Administrators to Provide Round-the-Clock, 24-7 on Site Prison Medical Services or Prohibit Providing Medical Care to Prison Inmates by Use of Local Emergency Rooms and Hospitals Between 5:00 p.m. and 9:00 a.m. on August 29, 2012.

## STATEMENT OF THE CASE

The Texas Department of Criminal Justice (TDCJ), the largest prison system in the United States, houses more than 150,000 inmates in 111 detention facilities statewide. The Garza West Unit has a maximum inmate capacity of 2,278, is managed by 323 security staff, 87 non-security staff, 7 Windham Education employees and shares 52 contract medical staff with the nearby Garza East Unit. Albert Hinojosa was one of 2,278 inmates housed at the Garza West Unit in Beeville, Texas, when he died on August 29, 2012.[9]

Hinojosa, then 44, had numerous medical problems that compromised his body's ability to endure heat. University of Texas Medical Branch (UTMB) medical staff were familiar with his medical history, had diagnosed and treated him and had "prescribed medications to treat his disabilities." These included hypertension, diabetes, depression, schizophrenia and obesity. A correctional officer was told shortly after midnight that

---

[9]    ROA.39, ROA.92-93

4

Hinojosa had been suffering convulsions.  The officer found Hinojosa unresponsive and a supervisor was called.  Because no medical staff was on duty, the supervisor called 911.  An ambulance arrived at 1:30 a.m. and rushed Hinojosa to the hospital, where he was pronounced dead.  The heat index at the time of Hinojosa's death was 92 degrees Fahrenheit.  An autopsy found Hinojosa "was vulnerable to the effects of environmental hyperthermia due to pre-existing natural disease, and likely suffered a seizure followed by fatal cardiac arrhythmia."[10]

The Complaint does not claim that executive defendants had knowledge of Hinojosa's medical condition before his death.  It does not claim that they received any medical recommendation by UTMB medical staff that he be transferred to any one of a number of the available air-conditioned environments, as admitted in the Complaint, or that they had any personal involvement in Hinojosa's medical care or housing assignment.  The Complaint admits that TDCJ had in place medical staff who had the authority to diagnose, treat and otherwise respond to inmate medical needs and who could recommend that inmates with special needs, such as heat vulnerability, be placed in climate controlled environments available at TDCJ for such purpose had a recommendation been forthcoming based on a diagnosed medical need.[11]

---

[10]      ROA.38-41
[11]

        "Dr. Murray and UTMB continued to house vulnerable inmates in extremely hot temperatures without any protections.  And he did this knowing that some areas of TDCJ units, including at the Garza West Unit, have air conditioned spaces available."  ROA.30 (Complaint, paragraph 89); "...Robles came to the Byrd Unit from an air-conditioned TDCJ inpatient mental-health facility."  ROA.26 (Complaint, paragraph 75);  "...some parts of the Garza West Unit are air conditioned and available to such as visitation rooms..."  ROA.21

## SUMMARY OF THE ARGUMENT

The District Court erred in denying the executive defendants' motion to dismiss on grounds of qualified immunity when Hinojosa's complaint contained neither allegations that they affirmatively participated in acts that caused Hinojosa's death nor allegations that they implemented  policies that violated clearly established law and resulted in Hinojosa's death.   The District Court compounded its error by permitting broad discovery on heat-management issues affecting the entire Texas prison system, irrelevant to the narrow issues raised in their motion to dismiss on the basis of qualified immunity.   Plaintiff's claim of a Constitutional duty to provide round-the-clock on site medically staffed prison facilities is inconsistent with precedent permitting prison officials to provide medical care via local hospitals and emergency rooms during off hours and is insufficient to defeat qualified immunity.[12]

---

(Complaint, paragraph 43).

[12]

Another district court dismissed a substantially identical claim against Thaler, Stephens and Livingston. *Martone et. al., v. Livingston, et. al.*, 2014 WL 3534696 at p. 7 (S.D.Tex.,2014):

The Court must disregard the Plaintiff's fourth argument as insufficiently pled. Plaintiff cites to paragraphs 57 through 60 in the Complaint in support of this argument (Doc. No. 33 at 21 n. 37), but these paragraphs largely attribute the policy decision to Dr. Murray, Dr. Linthicum, and UTMB. In paragraph 57, Plaintiff alleges that "Dr. Murray, Dr. Linthicum, and UTMB choose not to employ any medical staff at the Huntsville Unit between [7]:00 p.m. and 9:00 a.m." (Doc. No. 1 at ¶ 57.) Thus, "Dr. Linthicum, Dr. Murray and UTMB purposefully do not provide access to doctors or competent medical providers capable of providing treatment recommendations from [7]:00 p.m. to 9:00 a.m." ( Id. at ¶ 59.) Plaintiff includes the TDCJ Defendants abruptly in paragraph 60 without explanation: "Livingston, Thaler, Stephens, Alford, Linthicum, Murray, and UTMB made this decision for financial reasons ..." (Id. at ¶ 60.) The Court disregards this conclusory insertion of the TDCJ

Prison officials similarly situated to Appellants would not have had "fair warning" that precedent required them to create a policy dictating to medical professionals what medical response they are required to take for inmates with specific medical conditions or that they had a duty to provide 24-7 on site prison medical staff.[13]

## ARGUMENT

I.  **The District Court Erred in Permitting Discovery by Plaintiff on Heat-Management Issues Affecting the Entire Texas Prison System When That Discovery Was Irrelevant to Deciding Defendants' Motion to Dismiss on the Basis of Qualified Immunity.**

Plaintiff's claim that Hinojosa's medical condition required that he be placed in air conditioned housing in the summer of 2012 does not support the district court's reasoning permitting discovery over a three year period, including TDCJ system-wide policies and conditions at other TDCJ units:[14]

_____

Defendants into the policy decision at issue.

13

*Morgan v. Swanson,* 659 F.3d 359, 371-372 (5th Cir. 2011) ("....existing precedent must have placed the statutory or constitutional question beyond debate.  The *sine qua* non of the clearly-established inquiry is 'fair warning.'"); *Tolan v. Cotton,* 134 S. Ct. 1861, 1866 (2014) ("The salient question is whether the state of the law at the time of the incident provided fair warning to the defendants that their alleged conduct was unconstitutional.").

14

"...discovery may include Defendants' knowledge of extreme temperatures at the Garza West Unit, including knowledge of any prisoner complaints to prison officials about the temperatures in the dorms or cells for the months of May through September for the years 2010, 2011, and 2012....Plaintiff may inquire as to any policies and procedures in place at the Garza West Unit, as well as TDCJ system-wide policies or procedures, adopted or in place to address prison operations when temperatures are considered to constitute extreme heat."  ROA.1655-1656

There remain significant questions to be answered as to the details of the TDCJ Defendants' knowledge, actions, omissions and/or policies in regards to TDCJ prison operation in times of extreme heat. . .it is necessary to know when and how the TDCJ Defendants learned about specific prisoner deaths, including the death of Albert Hinojosa, and/or serious injury related to extreme heat; whether the TDCJ Defendants ordered that conditions be monitored or a study conducted regarding extreme heat and inmate safety; their familiarity with Fifth Circuit case law addressing the dangers of heat within the context of the Eighth Amendment and whether or not policies were implemented or changed in accordance with such direction; whether the TDCJ has performed any studies into the costs of reducing extreme temperatures within the dorms via more efficient systems, engineering modifications, or other facility upgrades; whether the TDCJ Defendants personally consulted with UTMB officials in regards to the transportation and housing of at-risk inmates during the summer months; whether the TDCJ Defendants considered that at-risk inmates be maintained in air-conditioned facilities when in transport; and whether the TDCJ Defendants received copies of notes, memoranda, e-mails, or other correspondence from TDCJ wardens concerning heat-related issues at their units and any administrative response thereto.[15]

The District Court concluded that it was "unable to rule on the immunity defense without further clarification of the facts" while at the same time, ruling that the executive defendants were not entitled to dismissal on the basis of immunity and must be subjected to extensive discovery.[16]  The District Court permitted Hinojosa to:

---

[15]     ROA.1654

[16]     The district court appeared to recognize the paradoxical nature of its finding that the Complaint states sufficient facts to infer that Defendants are "not entitled to qualified immunity" and its conflicting finding that "the Court remains unable to rule on the

> [I]nquire as to each Defendant's personal knowledge, if
> any, in regards to the effects of extreme heat on pre-
> existing medical conditions of hypertension, diabetes,
> depression, and schizophrenia, whether Defendants are
> familiar with the medications generally prescribed to treat
> such conditions, and whether Defendants have knowledge
> or training concerning medications and extreme heat.
> Plaintiff may inquire as to any policies and procedures in
> place at the Garza West Unit, as well as TDCJ system-wide
> policies or procedures, adopted or in place to address
> prison operations when temperatures are considered to
> constitute extreme heat.[17]

The District Court entered its order ostensibly on the basis of *Backe v. LeBlanc*,[18]

pursuant to which, a district court is authorized to permit discovery on the issue of

qualified immunity where (1) it has found that the plaintiff has pleaded facts that both

allow the court to draw the reasonable inference that the defendant is liable for the harm

---

immunity defense:

> The Court finds that Plaintiff has pled specific facts that allow this
> Court to draw the reasonable inference that Defendants are liable for
> the harm alleged and equally not entitled to qualified immunity such
> that dismissal on a Rule 12(b)(6) motion is not appropriate and is
> properly denied...***despite this determination,*** the Court remains
> unable to rule on the immunity defense without further clarification
> of the facts...(emphasis added)  ROA.1656

[17]   ROA.1655-56  Compare to an order in a substantially identical case, limiting discovery to "the death of Mr. Webb and the circumstances at the Hodge Unit, *not the circumstances at other units.*" *Edna Webb, et al v. Brad Livingston*, No. 14-40586.2017 (emphasis added). "Judicial notice may be taken at any stage of the proceeding," Fed.R.Evid. 201(f), including on appeal, id. advisory committee's note (1972 proposed rules), as long as it is not unfair to a party to do so and does not undermine the trial court's fact finding authority." *In re Indian Palms Associates, Ltd.,* 61 F.3d 197, 205 (3rd Cir. 1995).

[18]   *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

he has alleged and that defeat a qualified immunity defense with specificity.  However, a district court's conclusion of law that material fact issues exist which must be resolved before immunity can be decided, must have a legally supportable basis in the claims made in the complaint and may be reviewed for materiality.[19]

The District Court's order permits discovery vastly in excess of that required to determine whether the executive defendants affirmatively participated in any acts that allegedly caused any deprivation of Hinojosa's constitutional rights or implemented unconstitutional policies that causally resulted in Hinojosa's alleged constitutional injury.  Discovery on the issues identified by the District Court goes far beyond that relevant to deciding whether the executive defendants are entitled to qualified immunity in connection with Hinojosa's death and reached deep into areas such as complaints to any prison official over a three (3) year period by any Garza West inmate, whether or not the inmate had a medical condition similar to Hinojosa's.  Complaints by other inmates not similarly compromised by heat vulnerability due to a medical condition, as was Hinojosa, made to other prison officials is irrelevant to determining the

---

[19]

"An officer challenges materiality when he contends that taking all of the plaintiffs' factual allegations as true no violation of a clearly established right was shown."  *Reyes v. City of Richmond, Tex.*, 287 F.3d 346, 351 (5th Cir. 2002).

executive defendants' qualified immunity defense to causing Hinojosa's death.[20] What notice other officials had is not relevant to the executive defendants' immunity.

Moreover, the Complaint does not claim that Hinojosa died as a result of being transported in a vehicle without air-conditioning. Whether the executive defendants "considered that at-risk inmates be maintained in air conditioned facilities when in transport" is irrelevant as is what they knew generally about prison heat, what studies were conducted, policies regarding prison operations in times of extreme heat, when and how Defendants learned about specific prisoner deaths, their familiarity with Fifth Circuit precedents addressing the dangers of heat and whether policies were implemented or changed in accordance with such direction in the context of the claims made in the Complaint.

Whether the executive defendants consulted with officials of UTMB—which provides medical care to TDCJ offenders in many prison units[21]—regarding the transportation and housing of at-risk inmates during the summer months, or whether

---

[20]     The district court's order permits discovery of "knowledge of any prisoner complaints to prison officials about the temperature in the dorms or cells for the months of May through September for the years of 2010, 2011, and 2012." ROA.1655  Despite ordering expansive discovery as to other inmates, other TDCJ units and knowledge of complaints to other officials, whether or not the inmate had a medical condition similar to Hinojosa, the district court appeared to recognize that discovery should have been limited to Hinojosa's circumstances at the Garza West Unit. "The causes of action before this Court concern only Mr. Hinojosa and the conditions at the Garza West Unit." ROA .1656.

[21]     *Wilson v. McGinnis*, 2013 WL 5352699, at p. 1  (S.D. Tex. 2013) (TDCJ contracts with UTMB–CMC to provide medical care to TDCJ offenders.)

they received copies of notes, memoranda, e-mails, or other correspondence from wardens concerning heat-related issues at other units and any administrative responses is not relevant to the executive defendants' qualified immunity from the claim against them—that they had no policy that would screen offenders such as Hinojosa, who are medically vulnerable to heat, for climate-controlled housing, when UTMB medical staff did not make such recommendation.

Review of the District Court's discovery order should consider the extensive discovery provided by the executive defendants well beyond that relevant to their immunity defense in a substantially identical lawsuits, some of which are also pending appellate review before this Court.[22] Prior to the district court ordering that the executive defendants be subjected to extensive discovery including the circumstances of other inmates at other prison units, they responded to numerous discovery demands in substantially identical cases. Such discovery included:[23]

---

[22]

*Webb v. Livingston et. al.,* Case No. 14-40579, *Togonidze v. Livingston, et al.*, Case No. 14-40586; *Adams v. Livingston, et al.,* Case Number 14-40756; *McCollum v. Livingston, et al.,* USDC - Northern District of Texas, Case No. 3:12-cv-02037.

[23]

The extensive discovery to which the executive defendants responded to in substantially identical litigation in other district courts was made a part of the record in the Hinojosa case in an unsuccessful attempt to convince the District Court that they had already responded to discovery substantially beyond facts limited to their qualified immunity defense. ROA.181-436

Livingston's responses to First Set of Interrogatories and Request for Production;

Livingston's responses to 2nd Set of Interrogatories, Admissions/Request for Production;

Livingston's responses on behalf of TDCJ to First Set of Interrogatories and Request for Production;

Livingston's responses on behalf of TDCJ to Second Set of Interrogatories Request for Production and Admissions;

TDCJ'S Responses to 5th Request for Production and Request for Admissions-responded to by Livingston;

Deposition of William Stephens (147 pages);

Deposition of Rick Thaler (265 pages).[24]

The executive defendants provided thousands of pages of responses to interrogatories, admissions, requests for production and in the depositions of Thaler and Stephens, even before the District Court ordered the additional extensive discovery.

This was demonstrated to the District Court in their Reply to Plaintiff's Response to their Opposed Motion to Stay and Objections to Discovery wherein the discovery previously provided was attached as Exhibits.[25]  This previously provided discovery had already exceeded the limited discovery permissible on the qualified immunity issue.  By the date the District Court denied their Motion to Dismiss on the Basis of Qualified immunity and ordered that they be subjected to further discovery, March 27,

---

[24]     ROA.188-195, ROA.218-221, ROA.241-436

[25]     ROA.181-436

2014,[26] the executive defendants had provided the following discovery in substantially

identical litigation:

### TDCJ Director Brad Livingston in *McCollum v. Livingston, et al.,*

1.  Nine (9) Interrogatory Responses to First Set of Interrogatories.[27]

2.  Four (4) Request for Production Responses to First Set of Requests for Production.[28]

3.  Thirteen(13) additional Interrogatory Responses.[29]

4.  Six (6) additional Responses to Request for Production.[30]

5.  Fifteen (15) Requests for Admission Responses.[31]

6.  Seventeen(17) additional Interrogatory Responses by Livingston on behalf of TDCJ.[32]

7.  Twenty Seven (27) additional Request for Production Responses by Livingston on behalf of TDCJ.[33]

8.  Four (4) additional Interrogatory Responses by Livingston on behalf of TDCJ.[34]

9.  Thirteen (13) additional Request for Production Responses by Livingston on behalf of TDCJ.[35]

---

[26]     ROA.1641

[27]     ROA.242

[28]     ROA.244

[29]     ROA.250

[30]     ROA.254

[31]     ROA.255

[32]     ROA.262

[33]     ROA.266

[34]     ROA.277

[35]     ROA.279

10. Seventy Seven (77) Requests for Admissions by Livingston on behalf of TDCJ.[36]

11. One (1) additional Request for Production Response by Livingston and nine (9) Request for Admissions Responses on behalf of TDCJ.[37]

**TDCJ Director Brad Livingston in *Webb v. Livingston, et al.***

12. Twelve (12) Interrogatory Responses by Livingston.[38]

**TDCJ Correctional Institutions Director William Stephens**

1. Twelve (12) Interrogatory Responses.[39]

2. Deposition taken between 4:50 p.m. and 8:05 p.m. on October 13, 2013 numbering 147 pages and lasting three (3) hours.[40]

**TDCJ Former Correctional Institutions Director Rick Thaler**

1. Twelve (12) Interrogatory Responses.[41]

2. Deposition taken between 9:00 a.m. and 4:35 p.m. on October 13, 2013 numbering 265 pages and lasting seven (7) hours.[42]

Between these three officials, they have responded to 231 discovery requests, given 10 hours of depositions numbering some 400 pages and have furnished thousands of pages in response to production requests. Despite this extensive

---

[36] ROA.282

[37] ROA.297

[38] ROA.414   This adds up to 207 discovery responses numbering thousands of pages of documents including responses to requests for production.

[39] ROA.423

[40] ROA.301

[41] ROA.431

[42] ROA.341

discovery in virtually identical cases, the district court ordered the additional discovery referenced.  Enforcing such a discovery order under the circumstances essentially eviscerates the discovery protection that decades of precedent have established for public officials.  If additional discovery is permissible beyond this, then the phrase "discovery limited to facts relevant to qualified immunity" has no more meaning than words used by Humpty Dumpty.[43]

The District Court was made aware of this extensive discovery already provided by the executive defendants filing motions and objections seeking protection.[44]  The District Court order requiring additional extensive discovery in the context of voluminous discovery already provided, essentially renders meaningless "[o]ne of the most salient benefits of qualified immunity[—]protection from pretrial discovery, which is costly, time-consuming, and intrusive."[45]

The discovery permitted by the District Court was not narrowly tailored to uncover only those facts needed to rule on the immunity claim and includes vast swaths of inquiry having nothing to do with whether they had personal involvement in proximately causing Hinojosa's death on August 29, 2012 or whether they implemented policies that causally resulted in Hinojosa's alleged constitutional injury.

---

[43]  "When I use a word," Humpty Dumpty said, "it means just what I choose it to mean—neither more nor less."   http://en.wikipedia.org/wiki/Humpty_Dumpty

[44]  ROA.81  See specifically Doc. 11, Thaler, Stephens and Livingston's Reply to Plaintiff's Response to their Motion seeking Protection from discovery when the extensive discovery already responded to was detailed, referenced and discussed starting at ROA.181

[45]  *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986).

The District Court's order significantly overstepped the narrow boundaries set by *Backe* and should be reversed and remanded with instructions limiting discovery to areas that are reasonably relevant to the issue of the executive defendants' qualified immunity.

## II.   This Court Has Jurisdiction to Consider the Appeal of an Order Denying a Motion to Dismiss Based on Qualified Immunity.

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."[46]   A federal Circuit Court's jurisdiction extends to interlocutory appeals taken from both denials of motions to dismiss and motions for summary judgment.[47]   The District Court denied the executive defendants' Motion to Dismiss on the Basis of Qualified Immunity.[48]

---

[46]    *Mitchell v. Forsyth*, 472 U.S., 511 at 526, 105 S.Ct., at 2815(1985); *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004). (conduct cannot constitute a violation of clearly established law if, on the plaintiff's version of the facts, there is no violation at all.).

[47]    *Behrens v. Pelletier*, 516 U.S. 299, 307, 116 S.Ct. 834 (1996) (rejecting conclusion that officials have no right to appeal both a denial of motion to dismiss and motion for summary judgment based on qualified immunity); *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012) (We have appellate jurisdiction to review a district court's order denying a motion to dismiss on the basis of qualified immunity to the extent that it turns on an issue of law.").

[48]    " The Court finds that Plaintiff has pled specific facts that allow this court to draw the reasonable inference that Defendants are liable for the harm alleged and equally not entitled to qualified immunity such that dismissal on a Rule 12(b)(6) motion is not appropriate and is properly denied....Defendants Livingston, Thaler, and Stephens' Fed. R. Civ. Proc. 12(b)(6) motion to dismiss (D.E.7) stands denied, and the motion for reconsideration (D.E.30) is denied." ROA.1656-57

In the Fed. R. Civ. Proc. 12(b)(6) context, there can never be a genuine-issue-of-fact-based denial of qualified immunity, since the Court must assume that the plaintiff's factual allegations are true.  A denial of a motion to dismiss on the basis of qualified immunity is always "purely legal," so the Court of Appeals has  jurisdiction to determine whether the plaintiff has stated a claim under 42 U.S.C. 1983 and, if so, whether an official is immune to dismissal at this stage on grounds of qualified immunity.[49]  "[A] public official asserting a qualified immunity defense may not seek interlocutory appellate review of a district court's evidence sufficiency determination, [but] he or she may nevertheless argue on appeal [1] that the facts, even when viewed in the plaintiff's favor, demonstrate that the plaintiff's constitutional rights were not violated."[50]

Where a district court bases its refusal to grant a qualified-immunity motion on grounds that it is unable to determine the motion without discovery into the alleged facts, such a ruling is a legal conclusion  that the complaint alleges a constitutional claim on which relief can be granted.[51]  That purely legal decision does not turn on whether the plaintiff can elicit any evidence to support his allegations; it thus possesses

---

[49]  *Doe ex rel. Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), vacated *en banc* on other grounds, 113 F.3d 1412 (5th Cir. 1997).

[50]  *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 754 (5th Cir.2001).

[51]  *Locurto v. Safir*, 264 F.3d 154, 164 (2nd Cir. 2001) citing *X-Men, et al. v. Pataki, et al.*, 196 F.3d 56, 66 (2nd Cir. 1999).

the requisite finality for immediate appealability under the collateral order doctrine.[52]

From this it follows that even when a district court rejects a qualified immunity defense due to a perceived need for further discovery, an appellate court may exercise jurisdiction to review an interlocutory appeal that questions whether—on plaintiff's version of the facts—a defendant's actions violated the plaintiff's clearly established

---

[52]    This is not a novel legal proposition. *Soto-Torres v. Fraticelli*, 654 F.3d 153 (1st Cir. 2011) (declining to accept plaintiff's legal conclusions or unsupported assertions); *Locurto v. Safir*, 264 F.3d 154, 164 (2nd Cir. 2001) (when district court rejects qualified immunity defense due to a perceived need for further discovery, an appellate court may exercise jurisdiction to review an interlocutory appeal that questions whether—on plaintiff's facts—defendant's actions violated the plaintiff's clearly established constitutional rights as a matter of law) ; *George v. Rehiel*, 738 F.3d 562 (3rd Cir. 2013) (because district court held amended complaint sufficiently pled constitutional claims against the individual defendants, the practical effect of the district court's order was a denial of the defense of qualified immunity which was an appealable collateral order); *McVey v. Stacy*, 157 F.3d 271, 275-76 (4th Cir. 1998) (finding appellate jurisdiction to consider whether the defendants' conduct as alleged in the complaint was protected by qualified immunity as a matter of law); *Morgan v. Plano Independent School Dist.*, 724 F.3d 579, 582 (5th Cir. 2013) (Court of Appeals had jurisdiction to review district court's order denying motion for partial summary judgment based on school principal's governmental immunity from suit); *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012) ("Because the district court denied qualified immunity on the Cantrells' due process claim based on the pleadings, we will apply the standard of review that governs such a denial. 'We have appellate jurisdiction to review a district court's order denying a motion to dismiss on the basis of qualified immunity to the extent that it turns on an issue of law.'"); *Bright v. Gallia County, Ohio*, 2014 WL 2457629 (6th Cir. 2014) (although denial of a motion to dismiss based on absolute judicial immunity is not a final judgment, it is immediately appealable under the collateral order doctrine); *Chasensky v. Walker*, 740 F.3d 1088 *1092-93 (7th Cir. 2014) (district court's denial of defendants' 12(b)(6) motion to dismiss Chasensky's amended complaint based on qualified immunity is subject to an interlocutory appeal); *Hager v. Arkansas Dept. of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) ("This court reviews *de novo* the denial of a motion to dismiss on the basis of qualified immunity."); *Stapley v. Pestalozzi*, 733 F.3d 804, 809 (9th Cir. 2013) (order denying absolute immunity on a motion to dismiss constitutes immediately appealable final decision); *Pettigrew v. Oklahoma ex rel. Oklahoma Dept. of Public Safety*, 722 F.3d 1209 (10th Cir. 2013)(order denying motion to dismiss on ground of Eleventh Amendment immunity is final decision appealable under the collateral-order doctrine). *Leslie v. Hancock County Bd. of Educ.*, 720 F.3d 1338, 1343 (11th Cir. 2013) (whether complaint sets forth violation is a question of law subject to *de novo* review); *Behrens v. Pelletier*, 516 U.S. 299, 307, 116 S.Ct. 834 (1996). ("Mitchell clearly establishes that an order rejecting the defense of qualified immunity at either the dismissal stage or the summary judgment stage is a 'final' judgment subject to immediate appeal.").

constitutional rights as a matter of law.[53]  The legal basis is similar to that supporting

appellate review of a denial of a motion for summary judgment where officials have

been held immune despite the existence of immaterial fact issues.[54]

The Supreme Court rejected a conclusion holding that officials do not have a right

to appeal both a denial of a motion to dismiss and a motion for summary judgment

based on qualified immunity:

> The problem with this approach, however, is that it would
> logically bar any appeal at the motion-to-dismiss stage
> where there is a possibility of presenting an immunity
> defense on summary judgment; that possibility would cause
> the motion-to-dismiss decision to be not "final" as to the
> defendant's right not to stand trial...Whether or not a later
> summary judgment motion is granted, denial of a motion to
> dismiss is conclusive as to this right... the consequence
> would be, not that only one pretrial appeal could be had in
> a given case, as Justice BREYER proposes, but rather, that
> there could be no immediate appeal from denial of a motion
> to dismiss but only from denial of summary judgment. That
> conclusion is foreclosed by Mitchell, which unmistakably
> envisioned immediate appeal of "[t]he denial of a
> defendant's motion for dismissal or summary judgment on
> the ground of qualified immunity."[55]

---

[53]  *Behrens v. Pelletier*, 516 U.S. at 313, 116 S.Ct. 834, 840 (even where district court denies summary judgment because of material issues of fact, appellate court may still review purely legal question whether, on plaintiff's version of facts, qualified immunity standard has been met as matter of law); *McVey v. Stacy*, 157 F.3d 271, 275–76 (4th Cir. 1998) (following *Behrens*); *Brown v. Nix*, 33 F.3d 951, 953 (8th Cir. 1994).

[54]  *Johnson v. Johnson*, 385 F.3d 503, 523-524 (5th Cir.2004).  ("Johnson permits [a defendant official] to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the Harlow standard of 'objective legal reasonableness.'").

[55]  *Behrens v. Pelletier,* 516 U.S. 299, 307-308, 116 S.Ct. 834 (1996).

The Court explained that "denial of a motion to dismiss is conclusive as to this right [to avoid discovery]," and deemed it "settled... that this right is important enough to support an immediate appeal."[56]

The basis of appellate jurisdiction over denial of an official's qualified immunity based motion to dismiss coupled with a discovery order stating that "the Court remains unable to rule on the immunity defense without further clarification of the facts"[57] is articulated by the Second Circuit Court of Appeals:

> Where the district court bases its refusal to grant a qualified-immunity motion on the premise that the court is unable to, or prefers not to, determine the motion without discovery into the alleged facts, that refusal constitutes at least an implicit decision that the complaint alleges a constitutional claim on which relief can be granted. That purely legal decision does not turn on whether the plaintiff can in fact elicit any evidence to support his allegations; it thus possesses the requisite finality for immediate appealability under the collateral order doctrine.
>
> From this it follows that even when a district court rejects a qualified immunity defense due to a perceived need for further discovery, an appellate court may exercise jurisdiction to review an interlocutory appeal that questions whether—on the plaintiff's version of the facts—defendant's actions violated the plaintiff's clearly established constitutional rights as a matter of law.[58]

---

[56]   *Behrens v. Pelletier*, 516 U.S. at 308, 116 S.Ct. 834.
[57]   ROA.1656
[58]   *Locurto v. Safir*, 264 F.3d 154, 164-165 (2nd Cir. 2001). (citation omitted)

Subjecting officials to discovery while the District Court tarries on the immunity issue strips officials of the right to be free from the burden of discovery until the immunity issue has been resolved:

> ...we must determine whether the district court's order, which essentially defers consideration of the immunity defense until the facts were better developed, is an appealable order...But in rejecting the immunity defense "at this early stage," the district court necessarily subjected the commissioners to the burden of further trial procedures and discovery, perhaps unnecessarily. Its order implicitly ruled against the commissioners on the legal questions of (1) whether the plaintiff has adequately stated a claim for violation of a First Amendment right, and, if so, (2) whether the asserted constitutional right was clearly established at the time the defendants acted. These questions do not raise factual questions concerning the defendants' involvement, which would not be appealable under Johnson.  On the contrary, they are answered with the facts of the complaint assumed to be true as a matter of law.  They are therefore the very questions that Mitchell held were appealable. An analogous circumstance was presented in *Behrens*. The district court in that case denied the defendant's motion to dismiss on immunity grounds "without prejudice, on the ground that it was premature given the lack of discovery." 116 S.Ct. at 837.  The defendant appealed the "implicit denial of his qualified-immunity defense."
>
> ...
>
> The Supreme Court rejected the one-appeal rule and held that "an order rejecting the defendant's qualified immunity at either the dismissal stage or the summary-judgment stage is a 'final' judgment subject to immediate appeal."  When immunity is reviewed at the dismissal stage, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'"
> Explaining that appeal rights cannot depend on the facts of

a particular case and on their development, the Court said that appeal rights "must be determined by focusing upon the category of order appealed from." *Id.* at 841 (emphasis added). We conclude likewise that we have jurisdiction to consider whether the defendants' conduct as alleged in the complaint is, as a matter of law, protected by qualified immunity.[59]

By denying their motion to dismiss based on qualified immunity, the District Court concluded that Livingston, Stephens and Thaler had no right to avoid the burden of discovery and determined as a matter of law that the three highest ranking administrators of the Texas prison system may violate clearly established law and must submit to discovery—even if they had no direct role in ensuring that a specific prisoner's needs are being adequately responded to by prison medical staff or that they are properly housed consistent with those medical needs.

This Court has jurisdiction to consider this appeal a District Court order denying their Motion to Dismiss a Complaint which recites facts establishing the executive defendants' qualified immunity as a matter of law.

## III. The District Court Erred in Denying the Executive Defendants' Motion to Dismiss on the Basis of Qualified Immunity Where the Complaint Failed to Allege Sufficient Facts That Would Overcome Their Such Immunity.

This suit, brought pursuant to 42 U.S.C. § 1983 claims that a number of prison officials and medical staff were deliberately indifferent to Albert Hinojosa's medical

---

[59]    *McVey v. Stacy*, 157 F.3d 271, 275–76 (4th Cir.1998) (citing *Behrens v. Pelletier*, 516 U.S. 299, 307-308, 313, 116 S.Ct. 834, 840 (1996))

needs in violation of the Eighth and Fourteenth Amendment and failed to accommodate his alleged disabilities in violation of Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act.[60]  It is claimed that these violations proximately led to his death on August 29, 2012.

The executive defendants were identified by Plaintiff as the executive director of the Texas Department of Criminal Justice, the director of TDCJ's Correctional Institutions Division and the deputy director of TDCJ's Correctional Institutions Division.  The Complaint's premise is fairly summarized in paragraph 73, as a vicarious liability theory based on a claim of inadequate response by subordinates:[61]

> 73.   As the wardens and regional director, respectively, Guterrez and Kennedy are directly responsible for training the front-line officers charged with protecting prisoners' lives. Livingston, Thaler, and Stephens are ultimately responsible for ensuring all TDCJ corrections officers receive adequate training.   Each failed to provide meaningful training, and many people died as a consequence.

The claim that "Livingston, Thaler and Stephens are ultimately responsible for ensuring all TDCJ corrections officer receive adequate training..." is a respondeat superior claim.  Qualified immunity prohibits basing liability of a public official on the

---

[60]
Confinement conditions claims by a convicted prisoner are properly analyzed under the Eighth, not the Fourteenth Amendment.  *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir.1996).  Hinojosa does not claim to have been imprisoned pending trial.  *Edwards v. Loggins*, 476 F. App'x 325, 326 (5th Cir.2012) ("As a pretrial detainee, Edwards's constitutional rights were derived from the Fourteenth Amendment.").

[61]     ROA.27

theory that the official is "ultimately responsible"for the actions of subordinates.[62]  To

establish a failure to train, the plaintiff must show that:

> (1)  the supervisor either failed to supervise or train the subordinate official; (2)  a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. For an official to act with deliberate indifference a plaintiff must usually demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.[63]

Supervisory officials are not subject to *vicar*ious liability under 42 U.S.C. 1983.[64]

Executive defendants may be liable under 42 U.S.C. 1983 only if (1) they affirmatively

participate in the acts that cause the constitutional deprivation, or (2) they implement

unconstitutional policies that causally result in the constitutional injury.[65]  The

---

[62]

*Blackmon v. Kukua, et al*, 758 F.Supp.2d 398, 411 (S.D.Tex.,2010) ("The Fifth Circuit has held that supervisory officials are not liable under 42 U.S.C. §1983 unless "there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.").

[63]

*Goodman v. Harris County, et al.*, 571 F.3d 388, 395 (5th Cir. 2009); *Porter v. Epps*, 659 F.3d 440, 447-48 (5th Cir. 2011); *Walker v. Upshaw,* 515 Fed.Appx. 334 (5th Cir. 2013). (S.D. Tex. 2013, unpublished).  (Plaintiffs must allege with specificity how a particular training program is defective).

[64]  *Valentine v. Jones*, 2014 WL 1689202, at p. 2  (5th Cir. 2014), *citing Cozzo v. Tangipahoa Parish Council–President Gov't,* 279 F.3d 273, 286 (5th Cir.2002).

[65]  *Valentine v. Jones*, 2014 WL 1689202, at p. 2  (5th Cir. 2014), ("A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation.") *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir.2011). (A right is clearly established if "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.") (at page 2).

25

Complaint does not claim that each participated or had personal involvement in the acts that allegedly caused any deprivation of Hinojosa's constitutional rights.  Nor does it claim that each was aware of any medical condition of Hinojosa requiring a temperature-controlled environment.  Nor does the Complaint demonstrate that the executive defendants implemented any clearly established  unconstitutional policies that causally resulted in Hinojosa's death.  It is instead, premised on the rank of their positions and to impose liability on a respondeat superior theory, falling short of meeting the burden of providing as a basis for a right to relief "more than labels and conclusions."[66]

The Supreme Court has required that supervisory officials be shown to have personal involvement before qualified immunity may be held defeated.  *Ashcroft v. Iqbal* involved a lawsuit by a man who alleged that, while he was in federal custody , his jailors "kicked him in the stomach, punched him in the face, and dragged him across" his cell, pursuant to a policy of discrimination on the basis of race, religion, and national origin.[67]  The plaintiff alleged that former Attorney General Ashcroft was the "principal architect" of the policy and that he knew, or should have known, that constitutional violations were occurring and failed to correct them.  The Court held that

---

[66]     *Wilson v. Birnberg*, 13-20165, 2014 WL 2462561, at *3 (5th Cir. June 3, 2014) (A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do.") *(citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)).

[67]     *Ashcroft v. Iqbal*, 556 U.S. at 669 (2009).

the claim of "knowledge and acquiescence" by a supervisor is insufficient to impose liability.[68]  The Supreme Court acknowledged that *Iqbal* might have a valid claim for damages against the particular jailors who attacked him, but held that his complaint did not state a claim against Ashcroft, or former FBI Director Robert Mueller, both of whom were entitled to qualified immunity.[69]

Before *Iqbal*, all courts of appeals, including the Fifth Circuit, recognized some form of supervisory liability under 42 U.S.C. 1983.  In the Fifth Circuit, as in all courts of appeals, supervisory liability could still attach for failure to train, failure to supervise, or knowledge that subordinates are committing civil rights violations and ignoring or acquiescing in them.[70]

"But then, as the saying will surely go, came *Iqbal*."[71]  The *Iqbal* Court rejected supervisory liability as "a misnomer" and instructed that a government official "is only liable for his or her own misconduct."[72]  Policy and supervision are "the exact types of

---

[68]     *Ashcroft v. Iqbal*, 556 U.S. at 677 (2009).

[69]     *Ashcroft v. Iqbal*, 556 U.S. at 683-6  (2009).

[70]

   *Gates v. Tex. Dep't of Protective and Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008); *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998).  A treatise cautions that *Iqbal* "jettisoned the very concept" of supervisory liability. MARTIN A. SCHWARTZ, SECTION 1983 LITIGATION CLAIMS AND DEFENSES §7.19 at 7-268-7-269 (2010) (describing the contours of vicarious liability,  prior to Iqbal, in each circuit).

[71]   *Dodds v. Richardson,* 614 F.3d 1185 (10th Cir. 2010).

[72]   *Iqbal,* 556 U.S. 662, 129 S.Ct at 1948-49; see also 556 U.S. at 693, 129 S.Ct. at 1957 (Souter, J., dissenting) opined, "Lest there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating Bivens supervisory liability entirely."

supervisory liability that Iqbal eliminated."[73]  "[U]nder *Iqbal*, ... [a] defendant is not liable ... if the defendant's failure to act deprived the plaintiff of his or her constitutional right...Plaintiff's claim, based on [defendant's] 'failure to take corrective measures,' is precisely the type of claim *Iqbal* eliminated."[74]

The Complaint's basis for personal involvement is that when Hinojosa was incarcerated at the Garza West Unit, the executive defendants were aware that the inmate population included people who, like Hinojosa, had a medical condition such as hypertension, diabetes, depression, obesity and schizophrenia that made it medically necessary that they be housed in a climate controlled environment.[75]  At the same time, the Complaint acknowledges that medical staff employed by the University of Texas Medical Branch had the authority to and did make recommendations to TDCJ for inmates based on medical need.  UTMB's authority would necessarily include the identification of medical conditions requiring that inmates be placed in air-conditioned

---

[73]   *Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1835939, at page 6 (S.D.N.Y. June 26, 2009) (finding no liability after Iqbal "where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate"); *Newton v. City of N.Y.*, 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) ("[P]assive failure to train claims pursuant to section 1983 have not survived the Supreme Court's recent decision in *Ashcroft v. Iqbal*."); *Joseph v. Fischer*, No. 08 Civ. 2824, 2009 WL 3321011, at page 15 (S.D.N.Y. Oct. 8, 2009); Fazal R. Khan, Ensuring Government Accountability During Public Health Emergencies, 4 HARV.L. & POL'Y REV. 319, 332 (2010) ("[T]he 5-4 majority opinion stunningly rejected the concept of 'supervisory liability'"); Howard Wasserman, Iqbal III: The Death of Supervisory Liability, PROFSBLAWG (May 19, 2009)("[T]he straight-forward reading [ of Iqbal] is there is no longer any such thing as supervisory liability in constitutional cases.").

[74]   *Joseph v. Fischer*, 2009 WL 3321011, at pp. 14-15 (S.D.N.Y. Oct. 8, 2009).

[75]   ROA.15

housing when medically necessary to preserve their health and safety.[76] The Complaint sets out a factual basis supporting the conclusion that the executive defendants are immune from Hinojosa's claim that they were deliberately indifferent to his medical needs because plaintiff states that UTMB medical staff were tasked with the responsibility of identifying and responding to specific medical circumstances:

> 31....Dr. Murray is responsible for ensuring that TDCJ facilities serviced by UTMB provide adequate health care to prisoners, that prisoners have access to adequate health care, that infirmaries at units, including the Garza West Unit, are adequately staffed to handle medical conditions and emergencies that occur, and for formulating policies to ensure that prisoners receive adequate care, that serious medical needs are not treated with deliberate indifference, and that prisoners are not subjected to dangerous conditions as a consequence of their health issues and medical needs.

> 32...Despite having this responsibility, Dr. Murray, on behalf of UTMB, has been grossly derelict and deliberately indifferent when it comes to protecting inmates vulnerable to the heat.
> 41...Dr. Murray and UTMB have formulated forced labor policies designed to minimize possible heat exhaustion and heat stroke among inmates.

> 42...UTMB makes mandatory housing recommendations to TDCJ for some prisoners with disabilities-a prisoner using a wheelchair, for example, could not be assigned to a top bunk.

> 78...Dr. Murray instituted no changes to UTMB's intake and housing practices, and continued to leave vulnerable prisoners at risk of heat stroke system-wide.

---

[76]     ROA.21

89...Dr. Murray and UTMB continued to house vulnerable inmates in extremely hot temperatures without any protections. And he did this knowing that some areas of TDCJ units, including at the Garza West Unit, have air conditioned spaces available.

104...UTMB providers at all prisons, including the Garza West Unit, continued to house inmates vulnerable to the heat in dangerously hot temperatures during the summer months without any housing restrictions.

143...Dr. Murray, and the practices for which he is responsible, (including not placing housing restrictions on inmates vulnerable to the heat, not providing intake physicals for inmates when they first arrive...is deliberately indifferent to inmates vulnerable to heat...[77]

Murray failed to protect them by implementing policies that would modify or restrict inmates' housing assignments, and failed to provide prisoners like Webb any protection from the heat.[78]   Murray and UTMB choose not to restrict prisoners' housing in any way, or even recommend TDCJ house prisoners with these heat-sensitive medical conditions in safe environments...UTMB is empowered and obligated to restrict an inmate's housing when his or her serious medical condition requires it.[79]

---

[77] ROA.18-21, ROA.28, ROA.30, ROA.33, ROA.40  (Complaint, paragraphs 31, 32, 41, 42, 78, 89, 104, 143).

[78] ROA.526  Plaintiffs' Response to Dr. Murray's Amended Motion to Dismiss in *Webb v. Livingston, et al.*, USDC - Eastern District of Texas, Civil Action No. 6:13-cv-00711-JDL, Doc. No. 37, filed 10/30/2013;  *Webb v. Livingston, et al.,* is pending before this Court on appeal of substantially identical issues as the case at bar.  *Edna Webb, et al v. Brad Livingston, et al.* Fifth Circuit Case Number 14-40586.  Doc. 37 is part of the appellate record in that case.  When relevant and do not disturb fact findings by a district court, an appeals court may judicially notice its own records. *In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 205 (3rd Cir. 1995).

[79] ROA.530

The Complaint does not claim that the executive defendants were on notice that Hinojosa's medical condition required air-conditioned housing or that UTMB staff at the Garza West Unit were refusing to diagnose, treat or otherwise respond to his or any other inmate's medical needs.

> ...incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference.[80]

Assuming the Complaint's allegations to be true, that UTMB medical staff made no recommendation to the executive defendants—none of whom are identified as medically trained or familiar with Hinojosa's prescription drug regimen or medical needs in the absence of any personal involvement with Hinojosa or knowledge of his medical history, the executive defendants could not have been deliberately indifferent to Hinojosa's medical condition as a matter of law.

The District Court did not focus on the Complaint claim that Hinojosa died because he had not been placed in a climate controlled environment as required by his medical condition. Instead, the Court analyzed the Complaint's claims on a broad,

---

[80]     *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citations omitted).

general issue of a "'clearly established constitutional right' to be free from extreme temperatures."[81]  While the Complaint makes claims based on the absence of universal air conditioned housing for inmates, regardless of their medical condition,[82] this Court has not held that air conditioned prisons are Constitutionally required.[83]  This overly broad perspective led the district court to conclude that resolution of irrelevant facts such as the executive defendants' knowledge of heat studies done and the heat and transport practices and conditions in all 111 TDCJ Units, even those involving other inmates, required that it deny their Motion to Dismiss.[84]

The Supreme Court has noted that if a Constitutional right is defined at a sufficiently high level of generality, no official would ever be entitled to dismissal on the basis of immunity because a plaintiff could recite a provision of the Constitution

---

[81] ROA.1654

[82] ROA.17-20, ROA.30   For example, "TDCJ's leadership, including Kennedy, Stephens, Thaler, and Livingston, has taken no steps to air condition prisoner housing areas at the Garza West Unit."  ROA.19  (Complaint, paragraph 35).

[83] *Blackmon v. Garza,* 484 Fed. Appx. 866 (5th Cir. 2012) fn. 6 ("...we do not suggest that air conditioning is mandatory to meet the requirements of the Eighth Amendment.").

[84] The district court concluded that events concerning other inmates at other TDCJ units raised "significant questions to be answered as to the details of the TDCJ Defendants' knowledge, actions, omission and/or policies..." including "whether the TDCJ Defendants received copies of notes,  memoranda, emails, or other correspondence from TDCJ wardens concerning heat-related issues *at their units* and any administrative responses thereto."  The district court also ordered that "Plaintiff may inquire as to any policies and procedures in place at the Garza West Unit, *as well as TDCJ system-wide policies or procedures*, adopted or in place to address prison operations when temperatures are considered to constitute extreme heat." (emphasis added).  ROA.1654-56

and claim that the official violated it, regardless of the defendant's personal involvement or circumstances under which he acted or failed to act.[85]

> Qualified immunity depends substantially upon the level of generality at which the relevant "legal rule" is to be identified.  For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right.  Much the same could be said of any other constitutional or statutory violation.  But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of Harlow. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. Harlow would be transformed from a guarantee of immunity into a rule of pleading.  Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

---

[85]    *Anderson v. Creighton*, 483 U.S. 635, 639  (1987) (citations omitted)

The Fifth Circuit has summarize precedent on this issue:

> ...the Supreme Court has held that generalizations and abstract propositions are not capable of clearly establishing the law. The Supreme Court recently—and forcefully—underscored this point in *Ashcroft v. al-Kidd,* where it noted, with some exasperation, that it has "repeatedly told courts ... not to define clearly established law at a high level of generality."[FN30]

> FN30... *See also Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (holding that the clearly-established inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition").
>
> ...

> ...existing precedent must have placed the statutory or constitutional question beyond debate. The sine qua non of the clearly-established inquiry is "fair warning". Thus, we must ask "not only whether courts have recognized the existence of a particular constitutional right, but also...whether that right has been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct.[86]

Plaintiff has the burden to state facts demonstrating that no similarly situated official could have reasonably considered the conduct of the official to be lawful under the circumstances known to him at the time.[87] "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified

---

[86] *Morgan v. Swanson,* 659 F.3d 359, 372 (5th Cir. 2011).
[87] *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

immunity."[88]  When an official asserts qualified immunity, "...it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have then known that the alleged acts of the defendants violated the United States Constitution."[89]

Established precedent would not have given the executive defendants "fair warning" that they had a duty to air condition Texas prisons or that they could be held liable for prison medical staff's acts or omissions in responding to the medical needs of an inmate. Hinojosa's claim that a *per se* heat index of 92 degrees due to lack of air conditioning demonstrates the executive defendants' deliberate indifference to Hinojosa's medical needs[90] is not sufficient to defeat their immunity to a claim that they caused his death by not having a policy that requires inmates with certain medical conditions be placed in an air conditioned environment because it ignores the circumstances confronting them, which include knowledge of medical staff in place to deal with medical issues such as Hinojosa's.  A prison administrator's personal involvement, knowledge of a specific inmate's medical condition, the availability of responsive medical care, circumstances suggesting deliberate indifference to the specific inmate's health and safety in the situation presented and duty to respond to specific medical needs are relevant factors necessary to the resolution of a public official's qualified immunity:

---

[88]    *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990).
[89]    *Thompson v. Upshur Cnty., TX*, 245 F.3d 447, 460 (5th Cir.2001).
[90]    ROA.39

...a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference..[A]n official's failure to alleviate a significant risk that he should have perceived but did not ...[cannot] be condemned as the infliction of punishment...

In *Wilson v. Seiter*, we rejected a reading of the Eighth Amendment that would allow liability to be imposed on prison officials solely because of the presence of objectively inhumane prison conditions...prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.[91]

In view of the Complaint's allegations that UTMB's practice of making medically based inmate care recommendations to TDCJ officials, prison security administrators similarly situated to the executive defendants could have reasonably believed that an inmate with heat vulnerabilities due to a medical condition, would have been the subject of a UTMB recommendation for climate controlled housing, if such had been deemed necessary by qualified medical staff; the absence of such medical housing recommendation is a reasonable basis for believing that the UTMB medical staff did not conclude that Hinojosa's medical condition required placement in air conditioned housing.

---

[91]  *Farmer v. Brennan*, 511 U.S. 825, 837-838, 844, 114 S.Ct. 1970 (1994).

Without such recommendation, the executive defendants not being qualified in the medical field, and having no personal involvement with or knowledge about Hinojosa's medical history, had no reasonable basis to perceive a safety risk to Hinojosa based on his medical condition. Without a known basis to place him in a climate controlled environment, they were not deliberately indifferent to his medical condition as a matter of law. A prison administrator substituting his own judgment for that of medical staff in regard to an inmate medical problem jeopardizes the official's immunity.[92]

Precedent does not require prison security administrators to implement a policy dictating to medical staff what their diagnosis, treatment or recommendation should be in response to a specific set of inmate medical conditions. The executive defendants' response in not taking action based on an alleged inmate's medical need, of which they were unaware and unqualified to diagnose, is within bounds permitted by *Farmer v. Brennan, supra*. ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").[93]

When the district court made the conflicting findings that the Complaint set out facts sufficient to overcome immunity and that it could not determine the immunity

---

[92]    *Gamble v. Estelle,* 554 F.2d 653, 654 (5th Cir.1977) (prison administrator may be held liable for interfering with prison doctor's medical response to an inmate medical need.).

[93]    *Farmer v. Brennan*, 511 U.S. at 844, 114 S.Ct. 1970 (1994).

37

issue without further discovery,[94] it made an erroneous legal conclusion because the Complaint itself pleads facts that demonstrate the executive defendants' immunity. Clearly established law allows prison administrators to defer to prison medical staff, without personal involvement of the top levels of security management when the issue is what type of response, based on a particular medical condition, is warranted.

The Fifth Circuit has held that "pleadings' failure to allege the specific factual underpinnings of these legal conclusions is fatal in the face of the TDCJ–CID Director's assertion of qualified immunity."[95]  In another heat related prison injury case, TDCJ Director Livingston was held immune from suit in the absence of a showing of personal involvement or knowledge of plaintiff's circumstances.

> The summary judgment evidence does not show, however, that Defendant Brad Livingston, Executive Director of the TDCJ, knew about Blackmon's complaints, let alone that he took any action with respect to them.[96]

Although in Blackmon, Livingston was granted summary judgment, the foundation of the Court's decision was that he had not been shown to have had knowledge or personal involvement in Blackmon's circumstances.  While it may be

---

[94]

    ROA.1656  ("The Court finds that Plaintiff has pled specific facts that allow this Court to draw the reasonable inference that Defendants are liable for the harm alleged and equally not entitled to qualified immunity...despite this determination, the Court remains unable to rule on the immunity defense without further clarification of the facts..").

[95]   *Valentine v. Jones*, 2014 WL 1689202  (5th Cir.2014) (at page 2).

[96]   *Blackmon v. Kukua, et al*, 758 F.Supp.2d 398, 411, 414 (S.D.Tex.,2010).

argued that the executive defendants would be aware that some inmates with heat sensitive medical conditions may have a medical need for a climate controlled environment, the Complaint alleges facts that allow them to reasonably believe that UTMB medical staff would adequately respond to such medical needs. The Complaint in this case alleges no personal involvement in Hinojosa's circumstances and instead premises liability on "should have" theories. (Should have had round the clock on site medical care, should have had air conditioning, should have had a policy that required medical officials to recommend air conditioning for certain medical conditions.)

No summary judgment evidence is necessary to establish lack of personal involvement when it is admitted in the Complaint. Dismissal is appropriate for the same reason that Livingston was found to be immune in Blackmon. This result may be avoided if the Complaint's "should have" theories described conduct required by clearly established law. But precedent does not mandate air conditioned prisons, 24-7 on site prison medical care or a policy that requires medical providers to respond to an inmate medical condition in a certain way, *i.e.* require air conditioning for all obese, depressed, schizophrenic diabetics. Such a medical diagnosis may vary among inmates with similar diagnoses as best determined by qualified medical professionals who have diagnosed an inmate and are familiar with the specifics of his medical condition. Nor does the Complaint claim that the executive defendants were aware of a pattern or

practice of UTMB medical staff of refusing to provide adequate medical to inmates at the Garza West Unit.[97]

The lack of personal involvement of the non-medically qualified executive defendants, as alleged in the Complaint, is fatal to the Constitutional claims made against them. Hinojosa's Complaint demonstrates that TDCJ/UTMB had a system in place-medical staff at the Garza West Unit that could make recommendations for housing medically vulnerable inmates in an environment suitable to their medical condition.  That "the harm ultimately was not averted" does not support a conclusion that the executive defendants lose their qualified immunity when they defer to medical staff in deciding whether an administrative response, such as a housing transfer is necessary to preserve an inmate's health.  Established law does not require a policy that directs medical professionals to substitute a prison security official's medical judgment for theirs via a laundry list of medical conditions under which UTMB medical staff would be required to recommend air conditioned housing.

---

[97]

See, *Skinner v. Hinds County, Miss.* 2011 WL 4565586 at p. 5 (S.D.Miss.,2011) ("HCDC has policies regarding an inmate's request for medical attention, and Skinner himself used those procedures to request medical attention at HCDC. Though Skinner avers that medical attention was delayed or inadequate, there is no evidence suggesting that [Sheriff] McMillin was aware of Skinner's serious medical needs. In addition, there is no competent-record evidence that McMillin was aware—in July 2007—of any custom or policy of guards ignoring the HCDC's health-related policies. Absent a widespread history, knowledge is not imputed, and Skinner cannot show deliberate indifference. *Brewster v. Dretke*, 587 F.3d at 770. Skinner cited no competent-record evidence on these points and therefore failed to meet his burden of showing McMillin violated his constitutional rights and did so with objective unreasonableness.").

The Complaint alleges that UTMB medical staff are charged with diagnosing, treating and otherwise responding to inmate medical needs, including the making of recommendations to TDCJ as to when an inmate should be placed in a climate controlled environment due to his medical condition.[98]  Non medical prison officials may not be found liable for deliberate indifference absent a claim that they had reason to believe or actual knowledge that medical staff are failing to diagnose or treat a medical condition.

The Complaint's allegations that the executive defendants failed to have policies that dictated to medical providers how they should exercise their medical judgments-that they are liable for not having a policy that dictates to medical professionals what their response should be for inmates with certain medical conditions-goes beyond what established law requires-that medical security officials have available qualified medical staff and that they defer to the judgment of medical professionals in responding to inmate medical needs.[99]  Prison administrators are not deliberately indifferent to an inmate's  medical needs where administrators have no qualifications to assess inmate medical needs and it is not alleged in the Complaint that they were aware that prison

---

[98]

ROA.18-21, ROA.30, ROA.33, ROA.40 (Complaint, paragraphs 31, 32, 41, 42, 89, 104, 143)

[99]

*Lee v. Young,* 533 F.3d 505, 511 (7th Cir.2008) ("[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals.").  *Hayes v. Snyder,* 546 F.3d 516, 527 (7th Cir.2008) (reiterating "the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care").

medical staff were refusing to treat inmates or respond to their medical needs.[100]

Officials who are not physicians cannot be considered deliberately indifferent to a prisoner's medical needs because they failed to intervene in a prisoner's medical care or substitute their judgment for that of medical staff.[101]  To bring an insufficient medical treatment claim against non-medical prison personnel, plaintiff must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or were deliberately indifferent to the prison physician's misconduct.[102]  Where the facts in the Complaint plead the opposite, the Complaint should be dismissed.[103]

The District Court erred in declining to dismiss the Complaint against the executive defendants which, amounts to "naked assertions devoid of further factual

---

[100]  *Fantone v. Herbik,* 2013 WL 2564429 (3rd Cir.2013);  *Lee v. Rushing,* 2013 WL 2462247 (5th Cir. 2013) (Sheriff was not liable under § 1983 for deliberate indifference to prisoner's serious medical need based on prisoner's claim that sheriff was aware of prisoner's scalp condition and failed to ensure timely care, in alleged violation of Eighth Amendment; prisoner failed to allege personal involvement by sheriff in his treatment, medical complaints were monitored by the jail's medical personnel, and there was no evidence indicating that sheriff personally ignored prisoner's medical complaints or denied prisoner treatment.).

[101]  *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3rd Cir. 1993).

[102]  *Parker v. Amos,* 2011 WL 3568836, at p. 3,  (W.D.Va.,2011) citing *Miltier v. Beorn,* 896 F.2d 848, 851, 854 (4th Cir.1990).

[103]  *Johnson v. Johnson,* 385 F.3d 503, 524 (5th Cir. 2004).   (defendant's conduct cannot constitute a violation of clearly established law if, on the plaintiff's version of the facts, there is no violation at all*.); Valentine v. Jones,* 2014 WL 1689202, (5th Cir. 2014) (failure to allege the specific factual underpinnings of these legal conclusions is fatal in the face of the TDCJ-CID director's assertion of qualified immunity; *Blackmon v. Kukua, et al.,* 758 F.Supp.2d 398, 411, 414 (S.D. Tex. 2010) (Livingston immune from suit in prison heat injury case without showing of personal involvement or knowledge of plaintiff's circumstances).

enhancement."[104]    The District Court's paradoxical conclusion that Plaintiff's Complaint set out facts sufficient to overcome immunity and that it could not determine the immunity issue "without further clarification of the facts" was error.

The Complaint also claims that the executive defendants violated Hinojosa's rights under the 8th and 14th Amendments to the United States Constitution.[105]  A prison conditions claim by a prisoner convicted of a crime is governed by the Eighth and not the Fourteenth Amendment.[106]  Because the Complaint does not claim that Hinojosa was a pre-trial detainee, the Fourteenth Amendment claim should have been dismissed.

## IV.    Did Clearly Established Constitutional Law Require That Prison Security Administrators Provide Round the Clock, 24-7 on Site Prison Medical Facilities and Providers or Prohibit Them from Providing Medical Services to Prison Inmates by Use of Local Emergency Rooms and Hospitals During Certain Hours on August 29, 2012?

The Complaint claims Livingston, for financial reasons, " placed inmates at risk during the evening and the middle of the night, and at grave risk in emergency situations where medical care was immediately needed."  This claim is based on the absence of 24-

---

[104]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) ("... the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. ...Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation'").

[105]    ROA.10

[106]    *Velasquez v. City of New York*, 2012 WL 5879484  (E.D.N.Y.,2012) (at page 2) ("The Fourteenth Amendment 'requires prison officials to take reasonable measures to guarantee the safety of [detainees] in their custody...a pretrial detainee has a Fourteenth Amendment substantive due process right to care and safe conditions."); *Bell v. Wolfish*, 441 U.S. 520, 536, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (The Fourteenth Amendment governs a claim by a "pretrial detainee"—one who has had a "judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest.").

hour, on site prison medical facilities and personnel at the Garza West Unit which

allegedly delayed and/or denied Hinojosa "vital medical care."[107]

> The Garza West Unit Does Not Have Around the Clock Medical Staff.
>
> 68.    Moreover, Dr. Murray and UTMB choose not to employ any medical staff at the Garza West Unit between 6:00 p.m. and 9:00 a.m., even though over 2,200 men are housed there every night and significant numbers (greater than 10%) suffer from hypertension or diabetes, take medications for serious mental illnesses, or are otherwise at greater risk from the extreme heat – especially when first acclimating to such harsh temperatures.
>
> 69.    Livingston, Murray, and UTMB made this decision for financial reasons, despite knowing it placed inmates at risk during the evening and the middle of the night, and at grave risk in emergency situations where medical care was immediately needed.
>
> 70.    As a consequence, vital medical care was delayed and/or denied to Hinojosa...

A substantially identical claim was dismissed by another district court:

> Plaintiff alleges that "Dr. Murray, Dr. Linthicum, and UTMB choose not to employ any medical staff at the Huntsville Unit between [7]:00 p.m. and 9:00 a.m." (Doc. No. 1 at ¶ 57.) Thus, "Dr. Linthicum, Dr. Murray and UTMB purposefully do not provide access to doctors or competent medical providers capable of providing treatment recommendations from [7]:00 p.m. to 9:00 a.m." (Id. at ¶ 59.) Plaintiff includes the TDCJ Defendants abruptly in paragraph 60 without explanation: "Livingston, Thaler, Stephens, Alford, Linthicum, Murray, and UTMB made this decision for financial reasons ..." ( Id. at ¶ 60.) The Court disregards this conclusory insertion of the TDCJ Defendants

---

[107]    ROA.26

into the policy decision at issue. Plaintiff is given leave to amend should she so choose.[108]

Clearly established Constitutional law does not support this claim.

The Constitution does not require the Jail to have medical staff on duty twenty-four hours a day. (absence of a qualified nurse on twenty-four hour duty did not violate prisoner's constitutional rights) (absence of twenty-four hour medical staff on duty did not violate the prisoner's constitutional rights)[109].

There is no established Constitutional right to 24-hour on site prison medical facilities.

*Lindsey v. McGinnis*, 1994 WL 162610 (6th Cir. 1994) (Prisoner claimed unconstitutional delay in treatment due to defendants not providing 24 hour on site medical treatment):

Lindsey's reliance on *U.S. v. State of Michigan*, 680 F.Supp. 928 (W.D.Mich.1987), is misplaced. The court in that case did not order the facilities involved or LCF to provide 24-hour on-site physician services.

A detailed analysis of this issue summarizing applicable precedent is set out in

*Obata v. Harrington*, 2013 WL 1442481 pp. *3-4 (D.Hawai'i,2013): (citations omitted)

Plaintiff alleges that WCF's lack of an onsite, twenty-four hour emergency facility violates his rights under the Eighth Amendment.

...

---

[108]     *Martone et al. v. Livingston et al.*, 2014 WL 3534696 at *7 (S.D.Tex.,2014).

[109]     *Parker v. Amos*, 2011 WL 3568836 at *3 (W.D.Va.,2011). (citations omitted)

### 1.    Lack of a Twenty-Four Hour Emergency Care Facility.

Plaintiff fails to allege facts showing that WCF's lack of a twenty-four hour emergency care facility violated his constitutional rights. The Constitution requires prison officials to provide timely and adequate medical (and dental) care to prisoners. It does not require that every prison and jail have medical staff on duty twenty-four hours a day. (absence of availability to qualified nurse on twenty-four hour duty does not violate prisoner's constitutional rights); (absence of twenty-four hour medical staff on duty did not violate the prisoner's constitutional rights); (holding that prison's lack of twenty-four hour emergency infirmary, without more, fails to state a claim); (holding that jails and prisons are not required to provide twenty-four hour emergency care facilities). Notwithstanding WCF's alleged lack of a twenty-four hour infirmary, Plaintiff fails to allege sufficient facts showing that (1) he required emergency medical care for a serious physical condition, (2) prison officials were aware of his serious need, and (3) nonetheless, refused or were unable to transport him to an emergency care facility outside of the prison with deliberate indifference to his health and safety. As such, Plaintiff fails to state a claim and this claim is DISMISSED.

### 2.    Claims Against Warden Harrington.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.* Rather, each government official may only be held liable for his or her own misconduct. A defendant may be held liable as a supervisor under § 1983 if either (1) he or she was personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the Constitutional violation. In general, a plaintiff "must

allege that every government defendant—supervisor or subordinate—acts with the state of mind required by the underlying constitutional provision. Conversely, where there is no evidence that the supervisor was personally involved or connected to the alleged violation, the supervisor may not be held liable.

Plaintiff fails to establish that Warden Harrington was personally involved or otherwise responsible for the alleged delay or denial of medical care to Plaintiff. Plaintiff simply claims in conclusory terms that he was in pain on August 4, 2012, and that Warden Harrington knew that WCF lacked an onsite, twenty-four hour emergency facility. As explained above, even if Harrington was aware that WCF lacked a twenty-four hour infirmary, that does not equate to Harrington's deliberate indifference to Plaintiff's alleged need for emergency medical care on August 4, 2012. Plaintiff does not allege that Harrington was aware of Plaintiff's need for emergency care, or that Harrington instituted policies or procedures that denied medical services to prisoners who became ill overnight WCF. That is, that Harrington denied WCF staff the authority to transport Plaintiff or any other prisoner to an outside emergency medical facility if the need arose. An individual's "general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." Plaintiff's allegations against Warden Harrington fail to state a cognizable constitutional claim and are DISMISSED.

Where a prisoner has received some medical attention, there is no deliberate indifference to a medical need by security administrators. Even if the medical response was incorrect, medical malpractice does not state an Eighth Amendment claim.[110]

---

[110]
*Estelle v. Gamble,* 429 U.S. 97, 104-07 (1976). *Dixon v. Howe,* 44 Fed.Appx. 274 (9th Cir. 2002) ("Dixon failed to present evidence to refute defendants' contention that the delay he experienced was comparable to that typical in the medical community.").

Case: 14-40459    Document: 00512718347    Page: 59    Date Filed: 07/30/2014

Precedent does not require prison administrators to provide 24-7 on site inmate staff or medical services. Accordingly, the executive defendants are entitled to qualified immunity on this claim.

## CONCLUSION

Conclusory claims devoid of facts demonstrating personal involvement of the executive defendants in conduct prohibited by the Constitution do not defeat their qualified immunity under the facts set out in the Complaint. The Complaint claims the absence of policies not Constitutionally required, such as air conditioning, round the clock on site prison medical facilities and policies mandating a certain medical response, such as mandatory air conditioning for obese, depressed, hypertensive diabetics. Prison officials have not been held to have a Constitutional duty to make medical housing assignments through specific policies responsive to particular diseases or medical conditions, bypassing the judgment of qualified medical staff familiar with inmates' medical history, condition and medication. It is established law that security administrators may rely on the judgments and decisions of medical professionals tasked with administering inmate care. Applicable precedent does not require medically unqualified prison administrators to monitor inmates' medical history and substitute their own judgment as to a prisoner's housing, classification and treatment in response to a medical need.[111]

---

[111] *Lee v. Young*, 533 F.3d 505, 511 (7th Cir.2008) ("[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely

"A state official exercising discretionary authority whose conduct deprives another of a right secured by federal constitutional or statutory law is nonetheless shielded from personal liability for damages under 42 U.S.C. § 1983 by the doctrine of qualified immunity, unless at the time and under the circumstances of the challenged conduct all reasonable officials would have realized that it was proscribed by the federal law on which the suit is founded."[112]  The district court's legal conclusion on a pure matter of law-that the Complaint states sufficient facts to deny the Motion to Dismiss on the Basis of Qualified Immunity and to permit expansive discovery of TDCJ housing and transportation policies and studies of the entire TDCJ system and complaints by any inmate to any prison official at the Garza West Unit over a three (3) year period is not supportable by a comparison of clearly established law to the Complaint's claims made against the executive defendants.  The facts set out in the Complaint, in light of controlling principles of law, demonstrate that the executive defendants are entitled to qualified immunity where they had no personal involvement in any medical, housing or any other administrative decision relating to Hinojosa's confinement.  The District Court's order denying the executive defendants' Motion to

---

on the opinions of medical professionals."); *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir.2008) (reiterating "the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care"); *Obata v. Harrington*, 2013 WL 1442481 *3-4 (D.Hawai'i,2013) (Summarizing federal decisions holding that the U.S. Constitution does not require that prisons officials provide medical facilities and medical staff on duty twenty-four hours a day).

[112]  *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000).

Dismiss on the Basis of Qualified Immunity and permitting expansive discovery was error and should be reversed.

Respectfully submitted,

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division
/s/ DEMETRI ANASTASIADIS
**DEMETRI ANASTASIADIS**
Assistant Attorney General
Attorney-In-Charge
Texas Bar No. 01164480
Demetri.Anastasiadis@texasattorneygeneral.gov
Law Enforcement Defense Division
P.O. Box 12548
Austin TX 78711-2548
(512) 463-2080/ (512) 495-9139 Fax

**ATTORNEYS FOR APPELLANTS
LIVINGSTON, STEPHENS AND THALER**

**NOTICE OF ELECTRONIC FILING**

I, **DEMETRI ANASTASIADIS**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above an foregoing **Appellants' Brief**, in accordance with Electronic Case Files system of the U.S. Court of Appeals for the Fifth Circuit, on this the 30th day of July, 2014.

/s/ DEMETRI ANASTASIADIS
**DEMETRI ANASTASIADIS**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **DEMETRI ANASTASIADIS**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Appellants' Brief**, has been served on all counsel of record electronically via the Electronic Case File system of the U.S. Court of Appeals for the Fifth Circuit, on this the 30th day of July 2014.

Jeffrey S. Edwards
Jeff@edwards-law.com

Scott Medlock
Scott@edwards-law.com
*Attorneys for Appellee/Plaintiff*
*Ramona Hinojosa et. al.*

Bruce R Garcia
Bruce.Garcia@texasattorneygeneral.gov
*Attorney for TDCJ and Corrections Staff*

Shanna Molinare
Shanna.Molinare@texasattorneygeneral.gov
*Attorney for UTMB and Medical Staff*

/s/ DEMETRI ANASTASIADIS
**DEMETRI ANASTASIADIS**
Assistant Attorney General

# CERTIFICATE OF COMPLIANCE
With Type-Limitation, Typeface Requirements,
and Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[X]     this brief contains 13776 words, excluding the parts of the brief exempted by Fed. R. App.P.32 (a) (7) (B) (iii), or

[  ]    this brief uses a monospaced typeface and contains [state the number of lines of texas, including the parts of the brief exempted by Fed. R. App.P. 32(z) (7) (B) (iii).

2.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a) (5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]    this brief has been prepared in a proportionally spaced typeface using WordPerfect Office 12, in Times Roman 14-point type face, or

[  ]    this brief has been prepared in a monospaced typeface using [state name and version of work processing program] with [state number of characters per inch and name of type style].

/s/ DEMETRI ANASTASIADIS
**DEMETRI ANASTASIADIS**
Assistant Attorney General